IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                    Case No. 17-10047-01-EFM

ALAN FRANK HUTCHERSON,

Defendant.

MEMORANDUM AND ORDER

This matter comes before the Court on Alan Frank Hutcherson's motion to suppress. Hutcherson argues that the Court must suppress all evidence obtained following the traffic stop of his vehicle, as well as the substance of statements he made while in custody. The Government maintains that the search was constitutional under the circumstances of the case. The Court concludes that the stop and search of Defendant's vehicle on February 9, 2017, were constitutionally permissible, and finds that his statement made later that day was voluntary. Accordingly, the Court denies Hutcherson's motion to suppress. (Doc. 26)**.**

**I. Factual Background**

The evidence at the hearing establishes that on the day of the stop Emporia Police Department Narcotics Detective Dominick Vortherms was driving south on Industrial

Drive. Accompanied by two Homeland Security Special Agents, John Connors and Oscar Rodriguez, the officers were trying to locate a witness, a Mr. Hernandez, in southwest Emporia as part of an ongoing heroin investigation.

Vortherms was driving a white Crown Victoria with no markings on the sides and no overhead emergency lights. The vehicle does have a badge with the car number on the front, and has a lightbar on the interior. The vehicle has a dispatch radio, but no computer equipment.

When Vortherms stopped at the intersection of Industrial Drive and West 6th Avenue, he saw a purple Caprice facing him across the intersection. The driver, who eventually proved to be Defendant, waved at Vortherms, who returned the wave. As the driver turned right onto 6th Avenue, Vortherms saw the seat belt buckle hanging on the door post next to the driver.

Vortherms had seen that the Caprice had come from one of the streets where Hernandez lived. Vortherms had not seen Hernandez personally, and thought the driver of the Caprice might be Hernandez.

Vortherms decided to stop the driver of the Caprice for failure to use a seat belt. He turned left behind Defendant and activated his emergency lights and siren.

According to Vortherms, the Caprice did not stop immediately, but continued eastbound on 6th Avenue, which does not have a shoulder. Vortherms then activated a manual horn inside his vehicle. As he followed the Caprice, Vortherms saw Defendant ducking down towards the front passenger floorboard, as well as reaching back into the

middle of the rear passenger area.

Vortherms estimates that the Defendant drove 200 to 250 feet, for "around a minute." Vortherms notified dispatch of the stop and asked for other available units to help on an expedited basis.

After the Caprice stopped, Vortherms and the other officers, concerned by the driver's gestures, approached with weapons drawn and shouted for the Defendant to show them his hands. The Defendant continued to duck out of sight.

When the officers were a few feet away from the Caprice, approaching the vehicle from the right rear, the Defendant placed his hands in the air, and stepped out. The Defendant has his keys and several credit cards in his hand. Vortherms patted the Defendant down and found nothing.

He then asked why the Defendant hadn't pulled over immediately, and Hutcherson said he was looking for his registration. Vortherms asked for and received Hutcherson's drivers license. Vortherms told Hutcherson he was not wearing his seat belt, and asked if he was on probation, parole, or diversion, and Hutcherson responded he was on parole.

When Vortherms asked for insurance information, Hutcherson indicated the Caprice was not his car. Vortherms asked if Hutcherson could retrieve insurance information from the car, and followed him to the passenger side. Hutcherson opened the glove box and produced an insurance card which had expired in 2015.

Vortherms decided to place Hutcherson under arrest. He testified that, although he has discretion to simply issue a citation, his normal practice is to arrest a non-owner driver

who cannot provide proof of insurance.

Vortherms asked if the officers could search the car. Hutcherson refused, saying the car did not belong to him. Vortherms testified when he asked who the car belonged to, Hutcherson responded that it was his girlfriend, Tenisha Grey. Vortherms had previously known a Tenisha Grey who had some past involvement in narcotics in Lyon County, Kansas. Vortherms also testified that Hutcherson told him the car belonged to his grandfather, but this is uncertain. Vortherms later testified that Hutcherson might have told him the car belonged to his girlfriend's grandfather.[1]

Vortherms then told Hutcherson that he was under arrest for the seatbelt violation, and was placed in another police vehicle which had arrived at the scene. Vortherms called for a canine unit to sweep the Caprice.

At some point shortly after his arrival, another officer at the scene told Vortherms that dispatch reported the Caprice had been registered approximately two weeks earlier, and the registration showed that insurance was then in effect. Vortherms decided to impound the Caprice and called dispatch to arrange for a tow.

Deputy Jason Gifford, a certified canine officer with his dog Diego, was in the vicinity when he heard Vortherms' call for assistance. Gifford arrived approximately eight minutes after the call. After he walked around the vehicle to ensure there were no hazards to his dog, he led Diego by the leash around the vehicle. On two occasions, when passing

---

[1] The Defendant's girlfriend, Tenisha Williams, is not the Tenisha Grey previously known by Det. Vortherms.

4

by the car's door, Diego deviated the search pattern to try and enter the car. Gifford testified that this was an alert that there was an odor of narcotics inside the vehicle. When Gifford checked the interior of the car to see if there were hazards to the dog if it entered, Gifford himself smelled an odor of marijuana coming from the car. From the dog's behavior and his own senses, Gifford testified he knew there were drugs in the car or had recently been in it.

Gifford reported his findings, and the officers then began searching the vehicle. On the front passenger floorboard, they found a Wal-Mart bag with 9 mm bullets, marijuana, and a digital scale. They found another digital scale with white powder in the glove box. And in the center console of the rear passenger seat they found a Taurus pistol.

Vortherms read Hutcherson his *Miranda* rights. Hutcherson invoked his rights and indicated he did not want to speak. A deputy drove Hutcherson to the Lyon County jail.

The officers then conducted an inventory search of the vehicle prior to its impoundment.

Later the same day, Hutcherson indicated to staff at the jail that he wanted to talk about his case. Jail officers notified Vortherms, who again spoke with Hutcherson and repeated the Miranda warnings. Hutcherson told Vortherms he wanted to cooperate, and began speaking about his case, other local drug dealers, and about the heroin-trafficking investigation. When Vortherms asked about the Taurus pistol, Hutcherson made no response.

## II. Discussion

In his motion to suppress, the Defendant argues that evidence obtained from the stop was illegal, noting that although he was stopped for a seatbelt violation, Vortherms did not ask any questions about seat belt usage. He further argues that any probable cause the police had to arrest him for failure to have proof of insurance was invalid once the officers learned that proof of insurance had been presented at the time the car was registered. Defendant stresses that under K.S.A. 40-3104(e), subsequent proof of insurance is an effective defense to any prosecution for failure to present proof of insurance.

Kansas law provides that "[a]ny person operating a motor vehicle upon a highway … shall display, upon demand, evidence of financial security to a law enforcement officer."[2] The statute places the burden of providing proof of insurance on the driver, and failing to provide such proof is a class B misdemeanor.[3] If the driver cannot produce proof of insurance, the officer "shall issue" at least a citation,[4] but the statute also contemplates the arrest of a driver. Subsection (e) relied on by Defendant, precludes a criminal conviction if the driver can produce "within 10 days of the date of arrest or of issuance of the citation" proof of insurance "which was valid at the time of arrest or of issuance or of issuances of the citation."

Ultimately, however, the Defendant's motion does not turn on whether Det.

---

[2] K.S.A. 40-3104(d)(1).

[3] K.S.A. 40-3104(g)(1).

[4] K.S.A. 40-3104(d)(1).

Vortherms could lawfully arrest him for failing to provide proof of insurance. The evidence establishes that the officers at the scene had a reasonable suspicion of criminal activity, which permitted the relatively brief expansion of the traffic stop to permit the deployment of the canine unit. This reasonable suspicion, which was based on Defendant's conduct at the scene, was not altered by the radio report indicating that the car's registration included insurance information. Once the dog positively indicated to the presence of narcotics in the car, there was probable cause to arrest Hutcherson for narcotics, and for impoundment and inventory of the vehicle.

The Defendant acknowledges the Supreme Court's observation in *Peters v. New York*, 392 U.S. 40 (1968) that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*." However, he also cites *United States v. Humphrey*, 409 F.2d 1055 (10th Cir. 1969) for the proposition that "[f]urtive movements alone do not supply probable cause to search a car." (Dkt. 26, at 11).

This places too much reliance *Humphrey*, which does not provide support for suppression for two reasons. First, the court in that case did not purport to announce a general rule as to the weight to be given furtive movements in all cases. Rather, the court simply held that, under the facts of that case, a single instance of a passenger reaching under his seat was not sufficient by itself to uphold the search of the vehicle. The court concluded that "the allegedly 'furtive' movements alone establish nothing," but also held that the furtive movement coupled with the discovery of suspicious money orders

supported the search under the seat.[5]

Here, as noted earlier, the officers observed the driver of the vehicle delay pulling over and repeatedly bend down towards the passenger seat and the rear seat in what was most likely an attempt to conceal something. The Court does not find a driver's action of pulling over within 250 feet after being lit up by an unmarked police vehicle is particularly suspicious in itself.[6] What is suspicious is what the Defendant was doing during this delay, and in the time after he stopped but before he got out of his car. The Defendant's movements towards the front passenger floorboard and the rear passenger area occurred while he was pulling over, and again as three officers with drawn weapons approached his vehicle.

In *Humphrey* the court addressed whether a furtive movement by itself might create probable cause for a search of a vehicle. The issue in the present case is not probable cause,

---

[5] 409 F.2d at 1059.

[6] The government cites the Tenth Circuit's observation that "a driver's failure to stop his vehicle promptly is a factor that can contribute to reasonable suspicion of criminal activity." *United States v. Ludwig*, 641 F.3d 1243, 1248 (10th Cir. 2011) (citations omitted). However, the weight to be accorded that factor will vary with the facts of each case. In *Ludwig*, the court emphasized that after a highway patrol officer directed the defendant to pull over, he "moved onto the shoulder of the highway but then, for no reason compelled by traffic conditions, continued to drive for about a quarter mile to a half a mile." *Id.* (record citation omitted). Even then, though the facts in *Ludwig* are substantially more suspicions that the present case (the distance traveled being much longer, and lacking any indication the highway patrol car was unmarked) ultimately the court in that case assigned only limited weight to the delay, concluding that "even assuming that Mr. Ludwig's behavior wasn't enough by itself to justify his prolonged detention, we can't say it contributes absolutely nothing to a reasonable suspicion analysis." *Id.*

but reasonable suspicion. "[A] traffic stop may be expanded beyond the reason for its inception if an officer 'has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring.'"[7] The same standard will support a brief extension of a traffic stop for purposes of obtaining a canine unit to examine the exterior of a vehicle.[8]

The motion for suppression argues that "Mr. Hutcherson gave a reasonable and appropriate reason for why he was moving around in the car; he was looking for registration in a borrowed vehicle."[9] But while this might be a *possible* explanation for Defendant's gestures, it is not the most likely. The Defendant cites no law providing that a driver stopped for a traffic infraction must have his registration literally in hand at the very moment a police officer approaches his window. Moreover, as noted earlier, Hutcherson continued this behavior even after the stop, as three officers with drawn weapons approached his vehicle shouting at him. Under the circumstances, the most likely interpretation of Defendant's conduct was that he was attempting to conceal weapons or contraband.

The police had a reasonable suspicion that the Defendant was engaged in criminal

---

[7] *United States v. Sauzameda-Mendoza*, 595 Fed.Appx. 769, 774 (10th Cir. 2014) (quoting *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2014)).

[8] *See United States v. Simpson*, 609 F.3d 1140, 1143 (10th Cir. 2010) (finding under the facts there was "reasonable suspicion to justify extending a legitimate traffic stop to allow further questioning and a canine sniff of his automobile"); *United States v. Ma*, 254 Fed.Appx. 752,756 (10th Cir. 2007) ("there was sufficient reasonable suspicion to detain Mr. Ma pending the arrival of the canine unit").

[9] Dkt. 26 at 10.

activity. As the Tenth Circuit has stressed, courts should "remember ... that reasonable suspicion represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence."[10] Because the officers had a reasonable suspicion, they could briefly extend the traffic stop for additional questioning and for deployment of a canine unit. Once the canine gave a positive alert, the officers had probable cause to detain the Defendant and to search his vehicle.[11]

Numerous cases have concluded that similar conduct creates a reasonable suspicion of criminal activity.[12] And there is reason to believe that the Tenth Circuit would support such a conclusion. In *United States v. Johnson*,[13] the D.C. Circuit held that "furtive gestures in response to being confronted by a police officer [are] suspicious enough to support a reasonable belief that [a person] may have been engaged in criminal activity." In *Johnson*,

_____

[10] *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997) (quotations and citations omitted).

[11] *See United States v. Forbes*, 528 F.3d 1273, 1277 (10th Cir.2008) ("a canine's alert to the presence of contraband during an exterior sniff of a vehicle gives [an officer] ... probable cause ... to search that vehicle's interior").

[12] *See United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013) (defendant's "furtive gestures under his seat as the officers approached the vehicle gave them reason to believe that there was a weapon in the vehicle"); *United States v. Graham*, 483 F.3d 431, 439 (6th Cir.2007) (reasonable suspicion where officer saw defendant "dip[ping] with his right shoulder toward the floor as if he was placing something under his seat"); *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006) ("[f]urtive movements made in response to a police presence may also properly contribute to an officer's suspicions"); *United States v. Thompson*, 2016 WL 845337, *3 (W.D. Ky. March 2, 2016) (protective sweep of vehicle permissible after officers approaching vehicle saw driver "apparently trying to hide something under the seat").

[13] 212 F.3d 1313, 1317 (D.C. Cir. 2000).

two officers had approached a parked vehicle after seeing a woman leaning into the vehicle and apparently handing something to the passenger. The woman walked away and one of the officers told the passenger, "Let me see your hands."[14]  The court held that the officer could lawfully frisk the passenger, who "continued to make 'shoving down' motions, gestures that were the very opposite of complying with Fulton's order, and which a reasonable officer could have thought were actually suggestive of hiding (or retrieving) a gun."[15]

The Tenth Circuit cited *Johnson* with approval in a case involving similar facts in *United States v. Mosley*.[16] Officers investigating an anonymous tip approached a vehicle occupied by two persons and directed them to raise their hands. The driver did so, but the passenger "ignored [the] repeated commands" and "quickly began making furtive motions with his right shoulder and arm that officers testified were consistent with trying to either hide or retrieve a weapon."[17] The court held that the frisk of the passenger was justified under the circumstances, citing both *Johnson* and its earlier decision in *United States v. DeJear*.[18]

Defendant also argues that the police could not properly impound or inventory the

---

[14] *Id.* at 1314.

[15] *Id.* at 1316.

[16] 743 F.3d 1317, 1328 (10th Cir. 2014).

[17] *Id.* at 1321.

[18] 552 F.3d 1196, 1201 (10th Cir.2009) (holding that factors relevant to reasonable suspicion include "[f]urtive movements" by defendant).

vehicle. Police may lawfully conduct an inventory of a vehicle's contents under appropriate circumstances.[19] One such circumstance is when the police impound a vehicle that would otherwise be stranded when everyone in the vehicle is arrested.[20]

Defendant acknowledges this authority, but argues that there could be no valid inventory search here because the officers had an underlying investigatory motive. He also argues that Kansas law would not permit impoundment of the vehicle, since the officers did not give him the option of simply leaving the car parked. In support of the latter argument, Hutcherson cites *State v. Boster*[21] and *State v. Teeter*[22] but neither supports a determination that impoundment and inventory search of the Caprice was improper. Both *Boster* and *Teeter* are factually distinguishable, and reflect relatively early decisions rendered under Kansas law. The impoundment and inventory searches here are permissible under more recent interpretations of Kansas law, and independently under federal law recognized in Tenth Circuit precedent.

In *Boster*, the Kansas Supreme Court held that "[a]n inventory search cannot be valid unless the police initially obtain lawful custody of the vehicle."[23]  The court also observed

---

[19] *South Dakota v. Opperman*, 428 U.S. 364, 369-76 (1976).

[20] *See United States v. Shareef*, 100 F.3d 1491, 1508 (10th Cir. 1996).

[21] 217 Kan. 618, 539 P.2d 294, 299 (1975), *overruled on other gds., State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984).

[22] 249 Kan. 548, 819 P.2d 651, 653 (1991).

[23] 217 Kan. at 624.

that police may obtain custody of a vehicle by any number of means, including:

> (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture.[24]

The Kansas court held the inventory search in *Boster* was improper after noting that there was a passenger at the scene who could have been given control of the vehicle, and "[t]here was no reason at that time to suspect the car contained contraband, since defendant was only charged with driving without a license."[25]

In *Teeter*, the court observed that police may impound a vehicle if authorized by statute, or in the absence of express statutory authority, such impoundment is reasonable under the circumstances of the case.[26] The court held that the Hiawatha, Kansas police improperly impounded an illegally parked vehicle in which the defendant was found sleeping, where the defendant was neither arrested nor cited, and established "police policy [is] to instruct people found sleeping in their cars to go to a parking area by the lake,

---

[24] *State v. Boster*, 217 Kan. 618, 624, 539 P.2d 294, 299 (1975) (quoting *State v. Singleton*, 9 Wash.App. 327, 511 P.2d 1396 (1973)).

[25] *Id*. at 625.

[26] 249 Kan. at 551.

pull over out of the way, and sleep there."[27]

The present case is unlike either *Boster* or *Teeter*. First, statutory authority existed for impoundment of the defendant's vehicle. Under K.S.A. 8-1570(c)(2), police may impound a vehicle if "[t]he person or persons in charge of such vehicle are unable to provide for its custody or removal." Under Pararagraph (c)(3), the police may also impound a vehicle "[w]hen the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a judge of the district court without unnecessary delay." Here, the Defendant could not provide for the effective lawful custody given the discovery of contraband in the vehicle and the resulting probable cause for Defendant's arrest.

Even in the absence of express statutory authority, an impoundment was reasonable under Kansas law given the circumstances of the case. Unlike *Boster*, the police had strong evidence that the Defendant's vehicle contained contraband. Leaving a vehicle containing contraband on the side of the road would have been unreasonable.

The Kansas Supreme Court has cautioned against broadly interpreting *Boster* and *Teeter* into a requirement that an arrested driver's wishes may prevent lawful impoundment. In *State v. Shelton*,[28] the court upheld the impoundment of a vehicle after the Defendant was arrested for driving without a license. The court stressed that "[t]he Fourth Amendment does not require police to allow an arrested person to arrange for the

---

[27] *Id.*

[28] 278 Kan. 287, 93 P.3d 1200 (2004),

14

disposal or removal of his or her vehicle to avoid impoundment."[29]

> Perhaps our court has placed too much reliance upon the opportunity of a driver to dispose of the vehicle rather than submit to its impoundment. However, a careful reading of *Teeter* as well as other decisions by this court on the subject establish that impoundment is lawful if there are "reasonable grounds" for impoundment. Those earlier decisions from this court do not create a Fourth Amendment right to a police consultation regarding the disposition of the vehicle before impoundment may be lawful. Consultation is but one factor, although an important factor to be considered among the totality of the circumstances in the determination of whether impoundment is reasonable.[30]

The *Shelton* court ultimately held that impoundment of a van was lawful because, "[a]lthough the defendant was 'readily available' and may have been able to suggest an alternative disposition, he did not object or offer any alternatives."[31] The Tenth Circuit has explicitly upheld impoundment under similar circumstances. In *United States v. Hannum*,[32] the court held that officers could impound a vehicle under Kansas law when the defendant was unable to produce a lawful registration or proof of insurance.

The *Hannum* court further held, "[i]ndependent[] of the provisions of Kansas law," that the impoundment was permissible under federal law as "a proper exercise of the police community caretaking function."[33] This caretaking function includes vehicle

---

[29] *Id.* at 293.

[30] *Id.* at 295-26.

[31] *Id.* at 297.

[32] 55 Fed.Appx. 872, 875-76 (10th Cir. 2003).

[33] *Id.* at 876.

impoundment "when a motorist cannot produce proper registration or proof of insurance."[34] In reaching this conclusion, the *Hannum* court explicitly contrasted other decisions, including *State v. Ibarra*,[35] a case relied upon by the Defendant in the present action. The court contrasted the narrower Wyoming statute at issue in *Ibarra* with "the broad Kansas 'reasonable grounds' standard for impoundment" and stressed that in *Ibarra* there was nothing to suggest "that the car was not properly registered or insured." Here, Hutcherson did not propose any alternative disposition for the vehicle, there was some grounds for questioning the status of the car, and after the canine alert there was probable cause to believe the car contained contraband.

"[T]he police are not required to release a vehicle when there is no licensed driver to attend it."[36] Because the defendant was under arrest, there was no proof at the scene that the vehicle was insured, and because the officers had probable cause to believe the vehicle contained contraband, impoundment of the vehicle was appropriate.

And upon impoundment, the police were entitled to inventory its contents. "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be

---

[34] *Id.* (citing *United States v. Hunnicutt*, 135 F.3d 1345, 1351 (10th Cir. 1998).

[35] 955 F.2d 1405 (10th Cir. 1993),

[36] *United States v. Shareef*, 100 F.3d 1491, 1508 (10th Cir. 1996) (citing *United States v. Harvey*, 16 F.3d 109 (6th Cir.), *cert. denied*, 513 U.S. 900 (1994)).

able to devise equally reasonable rules requiring a different procedure."[37] Such a search is permissible where the police "follow[] standardized procedures," and have not "acted in bad faith or for the sole purpose of investigation."[38]

Nor does the fact that the police suspected the presence of contraband preclude an inventory. "While mixed motives or suspicions undoubtedly exist in many inventory searches, such motives or suspicions alone will not invalidate an otherwise proper inventory search."[39] Thus, a subjective desire to search for drugs will not invalidate an inventory which is otherwise conducted according to existing inventory procedures.[40]

The evidence produced at the hearing shows the officers could briefly detain Hutcherson based on a reasonable suspicion of criminal activity given his failure to pull over immediately, his repeated ducking down and apparently hiding something under the seat, and the dubious rationale he offered for his refusal to pull over (that he was looking for the car's registration). Given this suspicion, the car could be briefly detained for a canine unit.

Once the dog alerted, there was probable cause to arrest Hutcherson and for the

---

[37] *Colorado v. Bertine*, 479 U.S. 373 (1987).

[38] *Id.* at 372.

[39] *United States v. Cecala*, No. 99-4049, 2000 WL 18948, *2 (10th Cir. 2000).

[40] *See Linin v. Neff*, No. 15-298-JNP, 2016 WL 4129096, at *11 n. 1 (D. Utah. Aug. 2, 2016) (collecting cases outside the Tenth Circuit and concluding that "all other circuit courts addressing this issue have reached the same conclusion").

search[41] and detention of the vehicle. The detention of the vehicle was lawful under both Kansas law and federal law relating to the police community care-taking function, and the inventory search was permissible because it was conducted according to established procedures, notwithstanding the suspicion that contraband was present. The evidence establishes that, after receiving *Miranda* warnings at the scene, Defendant on his own initiative expressed a desire to communicate about his case, and was again informed of his rights before speaking. The circumstances show that he knowingly waived his rights and voluntarily made a statement. As a result, the Court finds no basis for suppressing any statements made by Defendant.

IT IS ACCORDINGLY ORDERED this 17th day of January, 2018, that Defendant's Motion to Suppress (Dkt. 26) is hereby DENIED.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[41] *See United States v. Engles*, 481 F.3d 1242 (10th Cir. 2007) ("once the dog alerted to the trunk and side door, the officers had probable cause to search the car and its contents") (citation omitted).

18